UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | | |
|---|---|---|
| ELIZABETH VALENTINE, et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | CIVIL ACTION NO. 5:14-CV-72 |
| VS. | § | |
| | § | |
| JUSTIN HODNETT, et al., | § | |
| | § | |
| Defendants. | § | |
| | § | |

## REPORT AND RECOMMENDATION

This case arises from a motor vehicle accident between Justin Hodnett ("Hodnett") and Jimmy Martin Valentine ("Valentine"). Valentine died at the scene of the accident, and his wife and children (collectively, "Plaintiffs") brought suit, in relevant part, against Hodnett and his employer LouTex Contractors, Inc. ("LouTex"). *See* Pls.' 2d Am. Pet. at 1–2, Dkt. No. 1-1. The District Court referred LouTex's Motion for Summary Judgment (Dkt. No. 41) and Motion to Strike (Dkt. No. 49) to the undersigned Magistrate Judge. (Dkt. No. 48.) Having considered the parties' arguments and the applicable law, the undersigned finds that the Motion to Strike should be **DENIED** and recommends that the Motion for Summary Judgment be **GRANTED**.

### I.    BACKGROUND

Hodnett began working for LouTex on Monday, June 11, 2012 – four days before the fatal accident. Harvey Aff. ¶ 3, Dkt. No. 41, Exhibit 1. He was employed by the company as a driving assistant; and his main duties included helping LouTex's drivers with directions, guiding its trucks, and flagging traffic when necessary. Hodnett Dep. 52:16–18, Apr. 2, 2015, Dkt. No. 47; Harvey Aff. ¶ 6. Hodnett's duties also involved some physical labor including helping to lift heavy equipment. Hodnett Dep. 54:6–10. He was not hired for the purpose of driving, and he

1

did not drive a LouTex-owned vehicle during his short tenure with the company. Hodnett Dep. 54:1–17; Harvey Aff. ¶¶ 3–6. Nor did he drive his personal vehicle for any work-related purpose. Hodnett Dep. at 52:16–18; Harvey Aff. ¶ 6. Instead, he used his truck for his private purposes – such as running errands. Hodnett Dep. at 21:15–16 (Hodnett: "[T]he only time I used my vehicle was to go get my own breakfast and my own lunch.").

Because LouTex operated several remote worksites, it provided portable buildings for its employees to rent if they wished to avoid long commutes to work. Hodnett Dep. 20–23. Hodnett stayed in one of these trailers while working for LouTex and paid the company approximately $150.00 per week in rent. *Id.* Each morning Hodnett reported to the nearby office area – which was within walking distance of the portable trailer homes – to be transported by another LouTex employee to that day's jobsite. *Id.*; Harvey Aff. ¶ 6. Hodnett testified that he was paid from the moment he was picked up in the morning until the moment he was dropped off in the evening. Hodnett Dep. 24:20–23. Consequently, he was not compensated for any time spent living in the portable trailer provided by LouTex, and he was not on-call after his shift was over. *Id.*

On the evening of June 14, 2012, Hodnett finished his ten-hour shift with LouTex at approximately 5:00 p.m. Hodnett Dep. 27:8–10. After work, he went to Doctor's Hospital in Laredo, Texas, to obtain treatment for lower back pain. *Id.* at 35–36, 56. Hodnett received a shot of narcotics while at the hospital and returned to his portable trailer to sleep. *Id.* at 35–38.

On the morning of June 15, 2012, Hodnett drove his personal vehicle from his portable trailer to a nearby gas station. Hodnett Dep. 39:6–14. According to his undisputed deposition testimony, he was going to the gas station for the purpose of buying breakfast and lunch. *Id.* at 26:16–19. After picking up his food, he planned to return to LouTex's office area to be picked

up for his next shift. *Id.* However, Hodnett never made it to work on June 15, 2012, because at approximately 6:25 a.m. he veered into oncoming traffic and collided with the vehicle driven by Valentine while driving to the gas station. *Id.* at 39:6–14; Tex. Peace Officer's Crash Report 1. Valentine died at the scene, and Hodnett was transported to the hospital. *See* Tex. Peace Officer's Crash Report 2. While investigating the scene of the accident, police officers found a bottle of Hydrocodone that was prescribed to Hodnett inside his vehicle. *Id.* Hodnett was not subjected to a blood test following the accident. *Id.*

As a newly re-hired[1] employee of LouTex, Hodnett was required to take a drug test before beginning work. Harvey Aff. ¶ 3. Hodnett's drug test was negative for any illicit drugs, *see* Harvey Aff. ¶ 8; Hodnett Dep. 53:14; however, he admitted to regularly taking prescription Hydrocodone to relieve his back pain both before and during his employment with LouTex. Hodnett Dep. 28–29. Hodnett testified that his back pain arose from a preexisting back injury that anteceded his employment with LouTex. *Id.* at 28:4–25. Hodnett stated that he informed LouTex of his Hydrocodone usage on his first day of work on Monday, June 11th, and that, in response, LouTex's safety inspector told him to "take it properly and not overdo it." *Id.* at 30–31. He also stated that he had not taken any Hydrocodone on the morning of the accident. *Id.* at 29:9–21.

Plaintiffs filed their Second Amended Petition in the District Court of Webb County, Texas, 111th Judicial District for the wrongful death of Valentine on April 22, 2014. (Dkt. No.

---

[1] Hodnett had previously worked for LouTex for approximately one month in April or May of 2012 before his entire shift was laid off. *See* Hodnett Dep. 7–11. Discussing his prior work experience with LouTex, Hodnett stated: "I didn't want to leave LouTex. That's why I was glad they called me back . . . . [] They seemed to be a good place to work. I loved the environment that I was working around." *Id.* at 9:16–22.

1-1.)  In their Second Amended Petition, Plaintiffs made the following allegations against

LouTex:

> At the time of the accident, Justin Hodnett was acting as the agent
> and employee of LouTex Contractors, Inc., at all times mentioned
> herein, and he was acting within the course and scope of his
> authority and employment and in the furtherance of his employer's
> business at all times mentioned herein, and any negligence of said
> Defendant, Justin Hodnett, is imputed to Defendant, LouTex
> Contractors, Inc.

Pls.' 2d Am. Pet. at 2–3.[2]  On May 22, 2014, LouTex filed its Original Answer generally

denying Plaintiffs' allegations.  Def. Org. Ans. at 1, Dkt. No. 1-1.  One day later, LouTex filed

its Notice of Removal, and this Court assumed jurisdiction over the case.  (Dkt. No. 1.)

The undersigned entered the Scheduling Order (Dkt. No. 29) on October 3, 2014, and

discovery proceeded without incident.  LouTex filed its Motion for Summary Judgment on May

29, 2015, which relied upon two pieces of evidence: the affidavit of its "Treasurer/Secretary,"

Judy Harvey, and the deposition of Hodnett.  (Dkt. No. 41.)  Based on this evidence, LouTex

argues that Hodnett was off-duty at the time of the accident and was acting exclusively for his

personal benefit.  *Id.*  Consequently, LouTex asserts that, as a matter of law, it cannot be held

vicariously liable for the tort of an off-duty employee who was not acting within the scope of his

employment and was not furthering LouTex's business purposes.  *Id.*  LouTex further argues that

there is no basis for independent liability, because there is no evidence that it assumed control

over Hodnett on the morning of June 15, 2012, even if he were intoxicated.  *Id.*

Plaintiffs filed their Response Opposing LouTex's Motion for Summary Judgment on

June 19, 2015, arguing that LouTex is vicariously liable to Valentine for Hodnett's negligence,

gross negligence and negligence per se and directly liable for its own negligence and gross

---

[2] Defendant LouTex has not moved for judgment on the pleadings under Fed. R. Civ. P. 12(c) or
for a more definite statement under Fed. R. Civ. P. 12(e).

negligence. (Dkt. No. 47.) The Court discerns four claims Plaintiffs raise in their Response: (1) liability can be imputed to LouTex because Hodnett was acting within the scope of his employment when the accident occurred; (2) LouTex is directly liable because it knew Hodnett was intoxicated and exercised affirmative control over him; (3) LouTex is directly liable because it caused the state of Hodnett's intoxication and owed Valentine a duty to prevent Hodnett from driving; and (4) LouTex is directly liable because it negligently hired and supervised Hodnett. *Id.* at 6–12. Additionally, Plaintiffs' Response points to the Texas Peace Officer's Crash Report ("Accident Report") as evidence of a disputed fact – whether Hodnett was under the influence of prescription drugs at the time of the accident. *Id.* at 6.

On July 17, 2015, LouTex filed its Motion to Strike the Accident Report prepared by the state police and offered by Plaintiffs as summary judgment evidence. (Dkt. No. 49.) LouTex argued that the "police report is inadmissible hearsay" and that the document cannot be saved by Federal Rule of Evidence 803(6)'s business records exception because "[p]laintiffs failed to authenticate the police record with a business records affidavit." Def.'s Mot. to Strike at 2–3.

The Court will now consider LouTex's Motion to Strike, and will then turn to its Motion for Summary Judgment.

## II. MOTION TO STRIKE

In its Motion to Strike, LouTex argues that Plaintiffs' primary piece of summary judgment evidence – the Accident Report – is inadmissible hearsay. Def.'s Mot. to Strike at 2. LouTex contends that because the Plaintiffs did not authenticate the police report, it cannot be considered as competent evidence in opposition to their summary judgment motion. *Id.*

LouTex is correct that before 2010, the Fifth Circuit held that "unauthenticated documents are improper as summary judgment evidence." *See King v. Dogan*, 31 F.3d 344, 346

(5th Cir. 1994); *see also Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 192 (5th Cir. 1991).

However, Rule 56 was amended in 2010, creating a new standard for the admissibility of

evidence at the summary judgment stage. *See* Fed. R. Civ. P. 56(c), 2010 Amend.; *El-Bawab v.*

*Jackson State Univ.*, 2013 U.S. Dist. LEXIS 104893 (S.D. Miss. July 26, 2013) (explaining the

amendment to Rule 56(c), and holding that documents in inadmissible form may be considered

as competent summary judgment evidence if the proponent demonstrates the document could be

put into admissible form for trial); *Brown v. Siemens Healthcare Diagnostics, Inc.*, 2012 U.S.

Dist. LEXIS 106569 (D. Md. July 31, 2012) (holding the 2010 amendments to Rule 56 made

explicit that each document need not be authenticated to be considered as competent summary

judgment evidence); *Akers v. Beal Bank*, 845 F. Supp. 2d 238 (D.D.C. Feb. 29, 2012) (holding

the 2010 Amendment to Rule 56 "eliminated the unequivocal requirement that documents

submitted in support of a summary judgment motion must be authenticated"); *see also Dunaway*

*v. Cowboys Nightlife, Inc.*, 436 Fed. App'x 386 (5th Cir. 2011) (unpublished) (reversing lower

court's grant of summary judgment, finding, among other things, that an unauthenticated FBI

report raised a genuine issue of material fact). Under the amended version of Rule 56, when a

party fails to offer evidence in admissible form at the summary judgment stage, the opposing

party may object by stating the evidence "cannot be presented *in a form that would be admissible*

*in evidence.*" Fed. R. Civ. P. 56(c)(2) (emphasis added). The commentary to the 2010

Amendment of Rule 56 explains the new procedure:

> Subdivision (c)(2) provides that a party may object that material
> cited to support or dispute a fact *cannot be presented in a form that*
> *would be admissible in evidence*. The objection functions much as
> an objection at trial, adjusted for the pretrial setting. The burden is
> on the proponent to show that the material is admissible as
> presented or *to explain the admissible form that is anticipated*.

Fed. R. Civ. P. 56, advisory committee note 2010 amend. (emphasis added).

Thus, given Rule 56's new standard regarding the competence of summary judgment evidence, the Court must decide whether the Accident Report could be put into admissible form at trial. LouTex is correct that the Accident Report is hearsay; however, it falls under at least two well-established hearsay exceptions – Rule 803(6) (business records exceptions) and Rule 803(8) (public records exceptions). Fed. R. Evid. 803(6) and 803(8). In the Fifth Circuit, Rule 803(8) reports are presumed to be trustworthy and admissible; therefore, it is the burden of the party opposing admission to demonstrate a lack of trustworthiness. *See Moss v. Ole South Real Estate, Inc.*, 933 F.2d 1300, 1305 (5th Cir. 1991). The trustworthiness of an 803(8) report depends on whether "the report was compiled or prepared in a way that indicates that its conclusions can be relied upon." *Id.* at 1307; *see also id.* at 1305 (noting that relevant factors in determining trustworthiness include: "(1) the timeliness of the investigation; (2) the special skill or expertise of the official; (3) whether a hearing was held and at what level; and (4) possible motivational problems [within the reporting entity]"). Certain information contained in a police report, however, such as a witness statement offered to prove the truth of the matter asserted, is "hearsay within hearsay" and cannot be admitted into evidence unless each level of hearsay satisfies a hearsay exception. *See* Fed. R. Evid. 805; *United States v. Dotson*, 821 F.2d 1034, 1035 (5th Cir. 1987); *Jacobs v. City of Port Neches*, 7 F. Supp. 2d 829, 835 (E.D. Tex. 1998).

Although the police report in this case is currently unauthenticated, it would likely be properly authenticated and admitted at trial through an affidavit of the record keeper or the live testimony of the police officer who prepared the report. Furthermore, the report does not appear to contain witness statements that would be inadmissible hearsay within hearsay. Finally, even if the Court were to exclude the police report as inadmissible summary judgment evidence, the fact that a Hydrocodone bottle was found inside Hodnett's vehicle at the scene of the accident would

still be a part of the summary judgment record through Hodnett's deposition testimony (which, notably, was introduced by LouTex in support of its Motion for Summary Judgment). *See* Def.'s Reply in Supp. Mot. for Summ. J., Dkt. No. 49, Exhibit B, Hodnett Dep. 38:23–25, 39:1–5.[3]

For these reasons, LouTex's Motion to Strike (Dkt. No. 49) is **DENIED**. The police report will be treated as competent evidence in considering LouTex's Motion for Summary Judgment.

## III. SUMMARY JUDGMENT

### A. Legal Standard

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (citing Advisory Committee Note to 1963 Amendment of Fed. R. Civ. P. 56(e)). Summary judgment is appropriate and the moving party is entitled to judgment as a matter of law if, after reviewing the pleadings, discovery, and any affidavits, the Court determines there is no genuine issue as to any material fact. Fed. R. Civ. P. 56; *see also*

---

[3] The transcript of Hodnett's deposition includes, in relevant part, the following exchange:

> Plaintiffs' Counsel: Was there any medicine or medicine bottles in your truck at the time of the collision?
>
> Hodnett: Yeah. There was a medicine bottle in my truck.
>
> Plaintiffs' counsel: What was that?
>
> Hodnett: That old Hydrocodone. It was just an old Hydrocodone bottle I had.
>
> Plaintiffs' Counsel: Okay. Was there any Hydrocodone in it?
>
> Hodnett: I don't know. I cannot recall.

Hodnett Dep. 38:23–25, 39:1–5.

*Kee v. City of Rowlett*, 247 F.3d 206, 210 (5th Cir. 2001). When reviewing summary judgment evidence, courts are to believe the nonmoving party's evidence and to draw all justifiable inferences in their favor. *See Hunt v. Cromartie*, 526 U.S. 541, 552 (1999).

LouTex, as the moving party, bears the initial burden of "informing the district court of the basis for its motion and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). However, because the Plaintiffs bear the ultimate burden of proof at trial, LouTex is entitled to summary judgment if it: (1) submits evidence that negates the existence of an essential element of the Plaintiffs' claims; or (2) demonstrates there is no evidence to support an essential element of the Plaintiffs' claims. *Id.*; *see also Saunders v. Michelin Tire Corp.*, 942 F.2d 299, 301 (5th Cir. 1991). If LouTex meets its burden under Rule 56, the burden shifts to the Plaintiffs, as the nonmoving party, to produce specific facts showing that there is some genuine issue of material fact for trial. *See Matsushita*, 475 U.S. at 587. The Plaintiffs may not rest upon their pleadings, but must identify specific facts that would permit a reasonable jury to return a verdict in their favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Furthermore, the Plaintiffs cannot satisfy their burden by raising "conclusory allegations, speculation, [or] unsubstantiated assertions." *Douglass v. United Services Auto. Ass'n,* 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc).

The existence of a factual dispute will not, in and of itself, defeat a motion for summary judgment. Rule 56 requires that the disputed fact be "*genuine* and *material.*" *Willis v. Roche Biomedical Labs., Inc.*, 61 F.3d 313, 315 (5th Cir. 1995) (emphasis in original). Only disputes over facts that might affect the outcome of the suit under the governing law are material. *Id.*

(citing *Anderson*, 477 U.S. at 248).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

Finally, for a claim to survive summary judgment, the non-moving party's operative pleading must contain sufficient factual allegations that state a claim for relief.  *See United Investors Life Ins. Co. v. Nationwide Life Ins. Co.*, 229 Fed. App'x 314 (5th Cir. 2007) (unpublished) (affirming summary judgment where plaintiff's complaint failed to state a claim upon which relief could be granted); *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1314–15 (11th Cir. 2004) (holding that federal pleading standards do not allow a party "to raise new claims at the summary judgment stage").  "A claim which is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court."  *Cutrera v. Bd. of Supervisors of La. State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005) (citing *Fisher v. Metro. Life Ins. Co.*, 895 F.2d 1073, 1078 (5th Cir. 1990)); *see also Bridgeport Music, Inc. v. WB Music Corp.*, 508 F.3d 394, 400 (6th Cir. 2007) (holding that a party may not expand its claims to assert new theories in opposition to a motion for summary judgment).  Although the sufficiency of a pleading is normally tested through a Rule 12(b)(6) motion, summary judgment is appropriate when the plaintiff has failed to state a claim.  *See Gilbert v. Outback Steakhouse of Fla., Inc.*, 295 Fed. App'x 710, 713 (5th Cir. Tex. 2008) (citing *Whalen v. Carter*, 954 F.2d 1087, 1098 (5th Cir. 1992)).  In this posture, "the failure to state a claim is the 'functional equivalent' of the failure to raise a genuine issue of material fact," *Whalen*, 954 F.2d at 1098, and a motion for summary judgment is properly granted "if, accepting all alleged facts as true, the plaintiffs' complaint nonetheless fail[s] to state a claim." *Ashe v. Corley*, 992 F.2d 540, 544 (5th Cir. 1993).

Applying the standards governing Rule 56 motions to the record provided by the parties, the Court will now consider whether summary judgment is appropriate in this case.

**B.  Sufficiency of Plaintiffs' Claims Raised in Opposition to Summary Judgment**

In their Response to LouTex's Motion for Summary Judgment, Plaintiffs discuss several potential bases for holding LouTex liable for Valentine's death: (1) LouTex is vicariously liable for Valentine's death because Hodnett was acting within the scope of his employment when the accident occurred; (2) LouTex owed Valentine an independent duty of care because it assumed control over an incapacitated employee; (3) LouTex owed Valentine an independent duty of care because its work environment created Hodnett's incapacitation; and (4) LouTex negligently hired and retained Hodnett despite knowing of his use of prescription painkillers.[4]  Pls.' Resp. to Mot. for Summ. J. at 1–2, Dkt. No. 47.  However, their Second Amended Petition dedicates only two sentences to LouTex:

> At the time of the accident, Justin Hodnett, was acting as the agent and employee of LouTex Contractors, Inc., at all times mentioned herein, and he was acting within the course and scope of his authority and employment and in the furtherance of his employer's business at all times mentioned herein, and any negligence of said Defendant, Justin Hodnett, is imputed to the Defendant, LouTex Contractors, Inc.
>
> . . . .

---

[4] In their Response, Plaintiffs specifically state:

> LouTex's role in Jimmy Valentine's death center on two stages of negligent activity.  LouTex caused Valentine's death by acting negligently in the decision to hire and retain Hodnett, and by acting negligently in its exercise of control over Hodnett on the job.  Both stages of negligence stem from the same basic fault: LouTex knew that Hodnett used intoxicating narcotic painkillers to lessen discomfort caused by labor.

Pls.' Resp. to Mot. for Summ. J. at 12.

> At the time of the collision described above, Defendant Justin Hodnett was the agent, servant, or employee of LouTex Contractors, Inc. and was acting within the scope of his authority as such agent, servant or employee.

*See* Pls.' 2nd Am. Pet. at 2–3. Because these two sentences arguably contain no factual allegations, it is debatable whether the claims against LouTex were raised for the first time in Plaintiffs' Response to Summary Judgment.

"To survive a motion to dismiss [or motion for summary judgment], a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)).

It is questionable whether Plaintiffs pleaded sufficient facts to state a respondeat superior claim that is plausible on its face. Plaintiffs' Second Amended Petition contains only conclusory and formulaic allegations that Hodnett was acting within the scope of his employment when the accident occurred. It is much clearer, though, that Plaintiffs failed to sufficiently plead facts to support their newly raised claims for negligent control of an intoxicated employee and negligent hiring and supervision. Their Petition contains no factual allegations that LouTex knew Hodnett was incompetent or unfit to perform his job, knew he was intoxicated on the morning of June 15th, contributed to his intoxication in any way, or took an affirmative step to exercise control

over Hodnett. Consequently, summary judgment could be granted on the basis that Plaintiffs have failed to state any claims against LouTex upon which relief can be granted.[5]

Nonetheless, even if the Court were to assume Plaintiffs sufficiently pleaded their claims against LouTex, none of their claims survive summary judgment on the merits.

### C. LouTex's Duties to Valentine

To establish tort liability, a plaintiff must prove the existence of a duty owed to him by the defendant and a subsequent breach of that duty. *See Otis Eng'g Corp. v. Clark*, 668 S.W.2d 307, 309 (Tex. 1983) (citing *Abalos v. Oil Development Co. of Texas*, 544 S.W.2d 627, 631 (Tex. 1976)).[6] "Liability is grounded in the public policy behind the law of negligence which dictates every person is responsible for injuries which are the reasonably foreseeable consequence of his act or omission." *Nabors Drilling, Inc. v. Escoto*, 288 S.W.3d 401, 403 (Tex. 2009) (citing *El Chico Corp. v. Poole*, 732 S.W.2d 306, 315 (Tex. 1987)). "[The] factors which should be considered in determining whether the law should impose a duty are the risk, foreseeability, and likelihood of injury weighed against the social utility of the actor's conduct,

---

[5] Because Plaintiffs failed to plead sufficient facts that LouTex owed direct duties to Valentine, they also failed to plead sufficient facts that LouTex was negligent or grossly negligent. Additionally, in their Second Amended Petition, Plaintiffs did not point to any statute that LouTex is accused of violating or any conduct amounting to a statutory violation giving rise to an independent negligence per se claim against LouTex. *See Welch v. Loftus*, 776 F. Supp. 2d 222, 226 (S.D. Miss. 2011) ("Rule 8 does not demand that a plaintiff claiming negligence per se include within his Complaint an explicit citation to authority simply for the sake of doing so. So long as the Complaint alleges particular conduct that clearly violates a statute or regulation, it pleads negligence per se with sufficient particularity."). Plaintiffs also did not mention their negligence per se claim against LouTex in their Response to LouTex's Motion for Summary Judgment. To the extent Plaintiffs continue to urge their negligence per se claim against LouTex, the Court agrees with LouTex that summary judgment should be granted because, "Plaintiff has not identified the alleged statute violated by [LouTex], nor has Plaintiff presented any evidence to suggest that [LouTex] violated any statute proximately causing Plaintiffs' alleged injuries." Mot. Summ. J. at 2.

[6] The existence of a duty is a question of law. *See, e.g.*, *Tri v. J.T.T.*, 162 S.W.3d 552, 563 (Tex. 2005); *Fort Bend County Drainage Dist. v. Sbrusch*, 818 S.W.2d 392, 395 (Tex. 1991).

the magnitude of the burden of guarding against the injury and the consequences of placing that burden on the employer." *Otis*, 668 S.W.2d at 309 (citing *Robertson v. LeMaster*, 301 S.E.2d 563 (W.Va. 1983)); *see also Turner v. Grier*, 43 Colo. App. 395, 608 P.2d 356 (1979).

Generally, there is no duty to control the conduct of another person even if the practical ability to exercise such control exists. *See Otis*, 668 S.W.2d at 309 (citing *Trammell v. Ramey*, 231 Ark. 260, 329 S.W.2d 153 (1959)); *see also* Restatement (Second) of Torts § 315 (1965). However, common law does impose a duty to control the conduct of another when a special relationship – such as parent-child or employer-employee – exists between the individual and the tortfeasor. *See*, *e.g.*, Restatement (Second) Torts §§ 315–20; *see also Graff v. Beard*, 858 S.W.2d 918, 920 (Tex. 1993) ("Under Texas law, *in the absence of a relationship between the parties giving rise to the right of control*, one person is under no legal duty to control the conduct of another . . . .") (emphasis added). Here, the relevant relationship is that of employer and employee.

Historically, an employer has possessed a duty to control his employee and prevent harm to others in two limited situations. First, an employer will be held liable for the tortious conduct of its on-duty employee if the employee is acting within the scope of her employment when the harm occurs. *Pickard v. Brown,* 2009 Tex. App. LEXIS 369 (Tex. App. Corpus Christi Jan. 22, 2009); Restatement (Third) Agency § 2.04 (2006) ("An employer is subject to liability for torts committed by employees while acting within the scope of their employment."). Second, it is generally accepted that an employer will be held liable for the off-duty torts of its employee if the employee committed the tort while on the employer's premises or while using the employer's chattel and the employer had the ability to control the employee and knew of the necessity of exercising such control. *See Otis*, 668 S.W.2d at 309; Restatement (Second) Torts § 317.

In addition to these two well established duties, Texas courts have recently expanded the duties employers owe to third parties based on the tortious acts of their employees. In *Otis*, the Texas Supreme Court stated that an employer owes a duty to third parties when it knows of its employee's intoxication and takes an affirmative step to control that employee. 668 S.W.2d at 309. Drawing on *Otis*, the Texas Supreme Court, in *D. Houston, Inc. v. Love*, imposed a duty on an employer to protect an intoxicated employee (and presumably third parties from that intoxicated employee) when the employee's intoxication resulted – at least in part – from a required condition of employment and the employer had the opportunity to exercise control over the employee before she left work. 92 S.W.3d 450, 457 (Tex. 2002). Finally, Texas courts have recognized a duty when an employer knows or should have known its employee is unfit or incompetent to perform her job and the employer is aware of the unreasonable risk of harm presented by the unfit employee. *See*, *e.g.*, *Morrone v. Prestonwood Christian Academy*, 215 S.W.3d 575, 585 (Tex. App. Eastland 2007).

The primary basis for imposing these narrow duties upon an employer based on its relationship with its employee is that the employer, in certain situations, possesses knowledge of foreseeable danger to others and has the authority to control the acts of its employee to prevent the harm. *See* Restatement (Third) Agency § 7.05.[7] Therefore, knowledge and control are

---

[7] Section 7.05 of the Third Restatement of Agency provides that:

> (1) A principal who conducts an activity through an agent is subject to liability for harm to a third party caused by the agent's conduct if the harm was caused by the principal's negligence in selecting, training, retaining, supervising, or otherwise *controlling* the agent.

> (2) When a principal has a special relationship with another person, the principal owes that person a duty of reasonable care with regard to risks arising out of the relationship, including the

essential elements in determining whether LouTex owed any of these narrow duties to Valentine. *Accord* Pls.' Resp. to Mot. Summ. J. at 8 ("LouTex had both the knowledge and control that *Otis* and *Love* require.").

### i. Vicarious Liability

Because LouTex employed Hodnett at the time of the accident, Plaintiffs seek to impute Hodnett's alleged negligence, gross negligence and negligence per se to LouTex. *See* Pls.' 2nd Am. Pet. at 2–3. One of the most common claims injured parties utilize to hold an employer responsible for the tortious acts of its employee is respondeat superior.[8] To hold an employer vicariously liable for the act(s) of an employee, a plaintiff must prove that the employee caused harm while acting within "the scope of the employee's general authority and in furtherance of the employer's business and for the accomplishment of the object for which the employee was hired." *Pickard,* 2009 Tex. App. LEXIS 369, *18 (internal quotation omitted); *see also DeWitt*

---

risk that agents of the principal will harm the person with whom the principal has such a special relationship.

(Emphasis added.)

[8] Comment (b) to the Third Restatement of Agency, § 2.04, discusses the history and purpose behind the doctrine of respondeat superior:

The doctrine [of respondeat superior] establishes a principle of employer liability for the costs that work-related torts impose on third parties. Its scope is limited to the employment relationship and to conduct falling within the scope of that relationship *because an employer has the right to control how work is done* . . . . Most often the doctrine applies to acts that have not been specifically directed by an employer but that are the consequence of inattentiveness or poor judgment on the part of an employee acting within the job description.

(Emphasis added.)

*v. Harris Cnty.*, 904 S.W.2d 650, 654 (Tex. 1995); Restatement (Third) Agency § 7.07.[9]  Before

an employer can be held vicariously liable for the acts of its employee, the plaintiff must prove

that the employee was in fact negligent.  *See Pickard,* 2009 Tex. App. LEXIS 369, *18 ("The

doctrine of respondeat superior requires the plaintiff to prove that the employee was negligent

and that the employee's negligence was the proximate cause of the plaintiff's injuries.").  For the

purpose of resolving this motion, the Court will assume that Hodnett was, in fact, negligent in

causing the accident and will turn to the question of whether his liability can be imputed to his

employer, LouTex.

An employee's act is within the scope of her employment when the act is of the same

general nature as the conduct authorized, or incidental to the conduct authorized, by the

employer.  *See Minyard Food Stores Inc. v. Goodman*, 80 S.W.3d 573, 577 (Tex. 2002) (holding

that an employee who defamed another during a workplace investigation for misconduct was not

---

[9] Section 7.07 of the Third Restatement of Agency provides:

> (1)  An employer is subject to vicarious liability for a tort committed by its employee acting within the scope of employment.
>
> (2)  An employee acts within the scope of employment when performing *work assigned by the employer or engaging in a course of conduct subject to the employer's control*. An employee's act is not within the scope of employment when it occurs within an independent course of conduct not intended by the employee to serve any purpose of the employer.
>
> (3) For purposes of this section,
>
> > (a) an employee is an agent whose principal controls or has the right to control the manner and means of the agent's performance of work, and
> >
> > (b) the fact that work is performed gratuitously does not relieve a principal of liability.

(Emphasis added.)

acting within the course and scope of his employment, as the acts were not of the same general nature of the conduct authorized. "[I]f an employee deviates from the performance of his duties for his own purposes, the employer is not responsible for what occurs during that deviation." *Id.*

Generally, an employee is not within the scope of the employer's business when driving his own vehicle for his own purposes before or after work. *See, e.g.*, *Ginther v. Domino's Pizza, Inc.*, 93 S.W.3d 300, 303–04 (Tex. App. 2002) (holding that Domino's Pizza was not liable when its off-duty employee caused the death of a third party while driving his friends around in the personal vehicle he also used to deliver pizzas); *see also J & C Drilling Co. v. Salaiz*, 866 S.W.2d 632, 636 (Tex. App. San Antonio 1993) (citing *Am. Gen. Ins. Co. v. Coleman*, 303 S.W.2d 370, 374 (Tex. 1957)) ("It is the general rule that use of public streets or highways in going to or returning from one's place of employment is not within the scope of one's employment."). Moreover, when an employee engages in a personal errand, the employee is not acting within the course and scope of his employment. *See*, *e.g.*, *J & C Drilling Co.*, 866 S.W.2d at 636 (holding that an employer is not liable under the doctrine of respondeat superior for injuries caused by an employee, who fell asleep while on call for a twenty-four hour period and driving a company-owned car, because the employee was on the way to purchase dinner at a local restaurant); *Diamond M Onshore v. Gutierrez*, 1998 Tex. App. LEXIS 5598 (Tex. App. San Antonio Aug. 31, 1998) (holding an on call employee who injured a third party while driving to a local restaurant was not within the scope of his employment); *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754 (Tex. 2007) (holding that Goodyear was not liable for an accident caused by its employee who drove a company truck to a convenience store to purchase cigarettes). The doctrine of respondeat superior does not impose liability on employers for accidents that occur during their employee's personal time, because the employer has no

authority to control, direct or alter the employee's conduct before or after the employee's shift. *See* Restatement (Third) Agency §§ 7.05, 7.07.

Plaintiffs assert that, "[a]t the time of the accident Justin Hodnett was acting as the agent and employee of LouTex Contractors, Inc. . . and he was acting within the course and scope of his authority and employment and in the furtherance of his employer's business . . . and any negligence of Justin Hodnett is imputed to LouTex Contractors, Inc." Pls.' 2nd Am. Pet. at 2–3. However, they concede that at the time of the accident "Hodnett was not 'on the clock'" and that "he was driving his pickup truck to a nearby gas station in order to buy the day's breakfast and lunch." Pls.' Resp. to Mot. for Summ. J. at 16.

The summary judgment evidence shows that Hodnett finished his shift on the evening of June 14, 2012, visited the hospital to receive an injection of narcotics to ease his back pain, returned to his portable trailer to sleep and, on the morning of June 15, 2012, woke up and drove his personal vehicle to a local gas station to buy breakfast and lunch. On his way to the gas station, he was involved in a motor vehicle accident that claimed the life of Valentine. At the time of the accident, Hodnett's shift had not begun and he was not on-call. Plaintiffs offer no evidence that Hodnett was acting within the scope of his employment or furthering LouTex's business purposes on the early morning of June 15th. Rather, all of the evidence shows that Hodnett was running a personal errand before the workday began and that LouTex did not control, direct or alter his conduct in any way. Because the Plaintiffs have produced no evidence supporting the essential elements of a respondeat superior claim, they cannot impute Hodnett's alleged negligence, gross negligence, and negligence per se to LouTex.

Having concluded that Plaintiffs' vicarious liability claims are unsupported by law and fact, the Court must now consider whether Plaintiffs' independent negligence claims against LouTex can survive summary judgment.

### ii. Direct Liability

Plaintiffs also seek to hold LouTex directly liable as Hodnett's employer for its own negligence and gross negligence with respect to Valentine. Pls.' Resp. to Mot. Summ. J. at 10–11. Texas employers generally owe no independent duty of care to third parties for the off-duty tortious acts of their employees. *Nabors Drilling, Inc.*, 288 S.W.3d at 403; *Loram Maint. of Way, Inc. v. Ianni*, 210 S.W.3d 593, 594 (Tex. 2006). Texas courts have recognized three narrow exceptions to this general rule when: (1) an employer assumes a duty to protect third parties by exercising affirmative control over the injury-causing conduct of its employee, *Otis*, 668 S.W.2d at 309; (2) an employer required its employee to consume alcohol on the job, *Love*, 92 S.W.3d at 457; and (3) an employer hired and retained an employee despite knowing the employee was unfit or incompetent to perform the job, *Ogg v. Dillard's, Inc.*, 239 S.W.3d 409, 420 (Tex. App. Dallas 2007). Plaintiffs assert that each of these exceptions applies in this case, and that LouTex is directly liable to Valentine for breaching these three duties of care.

### a. Assumption of Duty to Control an Intoxicated Employee

In *Otis,* the Supreme Court of Texas recognized that employers owe third parties a limited standard of care "when, because of an employee's incapacity, an employer exercises control over the employee." 668 S.W.2d at 311. This narrow duty only arises when an employer has actual knowledge of the employee's incapacitation and the employer affirmatively acts to control the incapacitated employee. *Nabors Drilling, Inc.*, 288 S.W.3d at 407; *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 758 (Tex. 2007); *see also Loram*, 210 S.W.3d at 597

(citing *Colonial Sav. Ass'n v. Taylor*, 544 S.W.2d 116, 119–20 (Tex. 1976)) ("Once affirmative action has been taken for the benefit of another, the employer has a duty to act with reasonable care, even if the employer initially had no duty to act."). An employer's mere knowledge, absent an affirmative act of control by the employer, is insufficient for the duty to arise. *See Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 526 (Tex. 1990). Furthermore, the act of control must "follow[], and [be] prompted by, the employee's incapacity." *Nabors Drilling, Inc.*, 288 S.W.3d at 407 (quoting *Otis*, 668 S.W.2d at 311). *Otis* did not extend the duty to situations where "the employer's only affirmative act of control preceded the employee's shift and incapacity and amounted only to establishing work conditions that may have caused or contributed to the accident." *Id.* (citing *Phillips*, 801 S.W.2d at 526).

In *Otis*, the plaintiffs sued Otis Engineering after one of its employees, Robert Matheson, caused a fatal car accident shortly after leaving work. 668 S.W.2d at 308. Matheson had a previous history of drinking on the job and was noticeably intoxicated during his shift. After receiving reports of Matheson's intoxication from fellow workers, the shift supervisor suggested that Matheson drive home. *Id.* The supervisor escorted Matheson to the parking lot and asked whether he was too impaired to drive. *Id.* Matheson indicated he could safely drive; however, only thirty minutes after leaving work he caused a fatal accident. *Id.* His blood alcohol level was 0.268. *Id.* The plaintiffs in *Otis* argued that because the supervisor knew of Matheson's intoxication, asked him to go home for the day, and walked him to the parking lot, the company breached a duty to third parties by facilitating a foreseeable and unnecessary risk of danger to others. The court agreed and adopted the following standard of care:

> [W]hen, *because of* an employee's incapacity, an employer exercises control over the employee, the employer has a duty to take such action as a reasonably prudent employer under the same

or similar circumstances would take to prevent the employee from
causing an unreasonable risk of harm to others.

*Otis*, 668 S.W.2d at 311. "Such a duty may be analogized to cases in which a defendant can exercise some measure of reasonable control over a dangerous person when there is a recognizable great danger of harm to third persons." *Id.* Thus, based on the particular facts of *Otis*, the court formulated a limited duty which focused on: (1) the existence of an incapacity, (2) the risk of harm presented by the employee's incapacity, and (3) the employer's exercise of control over the incapacitated employee. *Nabors Drilling, Inc.*, 288 S.W.3d at 406–07 (citing *Otis*, 668 S.W.2d at 311).

In this case, Plaintiffs assert that "LouTex knew that Hodnett used intoxicating narcotic painkillers to lessen discomfort caused by labor" and that "LouTex caused Valentine's death . . . by acting negligently in its exercise of control over Hodnett." Pls.' Resp. to Mot. Summ. J. at 2. Plaintiffs rely upon Hodnett telling LouTex's safety officer on his first day of work that he used Hydrocodone, and the safety officer responding by saying, "take it right and [don't] overdo it" as evidence of LouTex's knowledge of Hodnett's drug use and its affirmative control over his Hydrocodone use. Pls.' Resp. to Mot. Summ. J. at 4 (citing Hodnett Dep. 30–31). They appear to be arguing that the safety officer's single, isolated statement creates a genuine issue of material fact as to LouTex's knowledge of and affirmative control over Hodnett's intoxication.

First, there is no evidence on the record that Hodnett was, in fact, intoxicated on the morning of the accident. Plaintiffs draw the Court's attention to the bottle of Hydrocodone found in Hodnett's truck following the accident and seek an inference that Hodnett was under the influence of Hydrocodone when the accident occurred. While it is undisputed that a bottle of Hydrocodone was found in Hodnett's vehicle following the accident, *see* Tex. Peace Officer's Crash Report 2, this is not evidence that Hodnett used Hydrocodone on the morning of the

accident to the point of intoxication or impairment. In fact, Hodnett testified that he had not used Hydrocodone the morning of June 15th – a statement which is uncontradicted by the evidence offered by Plaintiffs. Hodnett Dep. 29:19–21, 30:6–12.[10] Additionally, there is no record that the state troopers investigating the accident ordered a blood test or cited Hodnett for DWI – which undercuts any inference that Hodnett's alleged intoxication caused the accident.

Even assuming the Plaintiffs produced evidence of Hodnett's intoxication, they offer no evidence that LouTex knew Hodnett was intoxicated on the morning of June 15, 2012. Plaintiffs rely on the fact that Hodnett disclosed his Hydrocodone usage to LouTex as evidence of its knowledge of his intoxication. However, all this proves is that LouTex knew Hodnett used Hydrocodone – a medicine which was prescribed to him by a doctor to deal with pain arising from a preexisting back injury – not that he was using this medication to the point of intoxication. Texas courts have been clear that general awareness of a potentially dangerous condition, as opposed to actual knowledge, is insufficient to establish liability. *See*, *e.g.*, *Goodyear Tire & Rubber Co.*, 236 S.W.3d at 758 ("Goodyear's [general] knowledge of Adams's work schedule and his commute, without more, does not raise a fact issue that he was, or that Goodyear knew or should have known that he was, an incompetent driver due to insufficient sleep.").

Even if the Plaintiffs could prove that Hodnett was intoxicated and could satisfy the knowledge component of the duty analysis, there is no evidence that LouTex – prompted by Hodnett's intoxication – had any opportunity to exercise post-incapacity control over him or alter

---

[10] When asked by Plaintiffs' counsel whether he "[h]ad taken any pills the morning of the wreck," Hodnett responded, "No." Hodnett Dep. 29:19–21. Hodnett was also asked whether he remembered "the last time you took a pill before the wreck," and he responded, "It was – it was the day before. It was probably – it was sometime during the day. I think midday, something like that." *Id.* at 30: 7–13.

the course of his conduct. When the only affirmative act of control "precede[s] the employee's shift and incapacity" and "amount[s] to establishing work conditions," the employer owes third parties no duty for the tortious acts of its employee. *See Nabors Drilling, Inc.*, 288 S.W.3d at 407 (citing *Phillips*, 801 S.W.2d at 526). The type of control discussed in *Otis* must be distinguished from the inherent control an employer exercises over its employees on a daily basis. *Id.* For the duty described in *Otis* to arise, the employer's control, established by its affirmative act, must be in reaction to the employee's intoxication. *Id.* The few words exchanged between Hodnett and LouTex's safety officer about his Hydrocodone usage preceded his scheduled shift on June 15th, were not prompted by any intoxication, and at most, established expectations and safety conditions for his use of prescription medications on the job. *Nabors Drilling, Inc.*, 288 S.W.3d at 407 (holding no duty when "the employer's only affirmative act of control preceded the employee's shift and incapacity and amounted only to establishing work conditions"). Unlike the employer in *Otis*, who witnessed firsthand the employee's intoxication during a work-shift and took the affirmative step of asking the employee to leave for the day, LouTex had no contact with Hodnett on the morning of June 15th.

In this case, Hodnett's shift had ended the night before the accident. In between his last shift and the morning of June 15th, Hodnett went to the hospital, returned to his residence to sleep, woke up and drove his truck to a convenience store to purchase his meals for the day. Plaintiffs offer no evidence that during this extended period of time LouTex had the opportunity, much less the authority, to exercise affirmative control over Hodnett. Because there is no probative summary judgment evidence that LouTex knew Hodnett was intoxicated on June 15th and exercised post-incapacity control over him, Plaintiffs have not established that LouTex owed

Valentine the independent duty of care described in *Otis*. Accordingly, Plaintiffs' claim under *Otis* fails as a matter of law and summary judgment should be granted.

### b. Duty to Protect Third Parties from an Employee Who Becomes Incapacitated as a Condition of Employment

"As in *Otis*, *Love's* duty analysis focuse[s] on the incapacity, the risk of harm, and the employer's control." *Nabors Drilling, Inc.*, 288 S.W.3d at 408. In *Love*, the court held that:

> [W]hen an employer exercises some control over its independent contractor's decision to consume alcoholic beverages to the point of intoxication, such that alcohol consumption is required, the employer must take reasonable steps to prevent foreseeable injury to the independent contractor caused by drunk driving.

*Love*, 92 S.W.3d at 456–57. Therefore, *Love* imposes a limited duty of care on an employer who contributes to the employee's intoxication as "a condition of employment or as an inevitable consequence of working for [the employer]." *Nabors Drilling, Inc.*, 288 S.W.3d at 409 (citing *Love*, 92 S.W.3d at 452–53).

In *Love*, the Plaintiff, who worked as a hostess at a nightclub, sued the nightclub after getting into a serious single-vehicle accident following her shift. 92 S.W.3d at 452–53. Love presented evidence that the night club required her to consume a large amount of alcohol throughout her shift as a condition of employment. *Id.* at 452, 454–56. Love testified that on the night of the accident she had consumed approximately twelve alcoholic beverages. *Id.* at 452. A subsequent blood test showed that her blood alcohol level was over two times the legal limit. *Id.* As Love was leaving the nightclub, her supervisor asked if she was alright to drive and she responded that she was "fine." *Id.* Shortly afterwards, she ran her car off the road into a guardrail, causing serious injury to herself. *Id.* The court found that Love's employer owed her (and presumably third parties) a duty to prevent her from driving when her employer required her to become intoxicated as a condition of employment. *Id.* However, the Texas Supreme

Court has made clear that *Love's* "language restrict[ed] [its] holding to [its] limited facts." *Nabors Drilling, Inc.*, 288 S.W.3d at 409.

Since *Love*, the Texas Supreme Court has refused to extend employer liability for the off-duty acts of employees to other factual scenarios. For example, the court declined to create a duty to third parties when the employer "knew about and sometimes encouraged the use of methamphetamine by employees." *Nabors Drilling, Inc.*, 288 S.W.3d at 409 (summarizing *Loram*, 210 S.W.3d at 595–97). In *Loram*, the employee of a railway repair business left work for the evening, got into a domestic dispute with his wife, and shot the police officer who responded to the scene – all while under the influence of methamphetamines. 210 S.W.3d at 595. The police officer sued Loram Maintenance, claiming it knew of and encouraged its employee's drug use, failed to properly control and supervise its intoxicated employee and negligently retained an incompetent, unfit, or dangerous employee. *Id.* The court, in reviewing the summary judgment evidence, inferred that Loram Maintenance encouraged its employees' drug use during their recreational time to ease the physical and emotional demands of their jobs. *Id.* at 595–97. The court also held that, for the purposes of summary judgment, Loram Maintenance knew its employee was agitated when he left work and that this agitation was likely caused by methamphetamine use. *Id.* Nevertheless, the Texas Supreme Court affirmed the trial court's order granting summary judgment in favor of Loram Maintenance and explicitly rejected any duty based on "employer-created risks related to job conditions." *Nabors Drilling, Inc.*, 288 S.W.3d at 409 (citing *Loram*, 210 S.W.3d at 595–97).

Similarly, in *Nabors*, the court refused to extend liability to employers when an employee's incapacity resulted from fatigue rather than intoxication. *Nabors Drilling, Inc.*, 288 S.W.3d at 409. In *Nabors*, the employee left Nabors Drilling's business premises after working

a twelve-hour shift and fell asleep while driving home. *Id.* The employee's vehicle crossed onto the wrong side of the road and collided with a vehicle, causing the deaths of four other people. *Id.* In deciding whether Nabors Drilling owed a duty of care to the decedents for its employee's tortious conduct, the court stated:

> [T]here is an undeniable utility in allowing employers to require a productive day's work from its employees, even when shifts may be long . . . A duty that could, in effect, impose liability on employers allowing employees to leave the work site if they exhibit any signs of possible fatigue would be far-reaching and onerous . . . Because an employer owes no duty to act to control the conduct of an impaired off-duty employee, off-duty employees must be trusted to determine whether they are sufficiently rested to drive safely.

*Id.* at 411–12. The court ultimately determined that "considering the large number of Texans who do shift work and work long hours (including doctors, nurses, lawyers, police officers, and others), there is little social or economic utility in requiring every employer to somehow prevent employee fatigue or take responsibility for the actions of off-duty, fatigued employees." *Id.* at 410–11.

Therefore, to the extent Plaintiffs are arguing that LouTex is liable for creating work conditions that encouraged drug use, their argument is foreclosed by *Loram*. Likewise, if Plaintiffs are claiming that LouTex is liable for contributing to Hodnett's physical fatigue and pain, their argument is excluded by *Nabors*. Consequently, to recover based on the duty articulated in *Love*, Plaintiffs must show that Hodnett's intoxication was "a condition of employment or an inevitable consequence of working for [LouTex]" and that LouTex had the opportunity to take reasonable steps to prevent injuries to Hodnett and others. *Nabors Drilling, Inc.*, 288 S.W.3d at 409.

Plaintiffs argue that LouTex's work conditions caused Hodnett "serious back pain . . . [which], in turn, caused Hodnett to take more narcotics." Pls.' Resp. to Mot. Summ. J. at 5. They correctly quote the duty announced in *Love* as follows: "[I]f an employer requires its independent contractor while working to consume alcohol in sufficient amounts to become intoxicated, it owes her a duty to take reasonable care to prevent her from driving *when she leaves work*." *Id.* at 7 (quoting *Love*, 92 S.W.3d at 452) (emphasis added). However, this case is distinguishable from *Love* in several important respects. First, Hodnett's back pain was not a condition of employment or an inevitable consequence of working for LouTex. In fact, Hodnett's back pain did not originate from his work for LouTex – but stemmed from a horseback riding accident that occurred years earlier. Hodnett Dep. 28:4–25.

Moreover, there are no facts on the record that LouTex's labor requirements resulted in back pain to the point of incapacitation for some or all of its workers. There is also no summary judgment evidence that LouTex required its employees with preexisting conditions to medicate (or over-medicate) to carry on with their job duties. Instead, Hodnett took Hydrocodone to relieve pain that was specific to him, and his use of Hydrocodone benefited him alone.[11] LouTex cannot be held liable merely for giving a person with an injured-back a job; and if the Court were to hold otherwise, employers would either become general insurers of the public's safety or would be permitted to discriminate against prospective employees with pre-existing health conditions. Under *Love*, LouTex would only be liable if, as a condition or natural consequence of employment, it created the incapacity by requiring its employees to become intoxicated. There is no evidence of that here.

---

[11] Hodnett last filled his prescription for Hydrocodone shortly before beginning work for LouTex. *Id.* at 29:7–11.

Even if the Court accepted Plaintiffs' argument that Hodnett's intoxication was a required condition of his employment with LouTex, the duty in *Love* is also limited in time and space to when the employee is about to leave the business premises while intoxicated. *Love*, 92 S.W.3d at 452 (holding the employer must exert "reasonable care to prevent [an intoxicated employee] from driving *when she leaves work*") (emphasis added). The standard of care is cabined to what the employer knows, can foresee, and can prevent just before the employee leaves the jobsite. Plaintiffs' argument would extend *Love* boundlessly by requiring employers to exercise authority and control over their intoxicated employees anytime. For example, under Plaintiffs' theory, the nightclub employer in *Love* would still have been liable even if he had driven Love to her home and the accident had occurred hours later after Love had awakened and decided to drive again. *Love* simply does not support the theory Plaintiffs urge, because it does not require an employer to monitor its employee's state of intoxication around the clock. In this case, nothing in the record indicates that Hodnett was intoxicated when he left work on the evening of June 14th. Because the accident occurred after Hodnett left his residence many hours after leaving LouTex's business premises, there is no basis for holding LouTex liable for Hodnett's actions.

In sum, no duty arises unless the employer directs the employee to become intoxicated – and even then the standard of reasonable care is limited to when the employee is about to depart the workplace. Here, LouTex did not cause Hodnett to become intoxicated as a requirement of his employment and had no duty to protect Valentine from an accident that occurred more than twelve hours after Hodnett had left its business premises. Therefore, LouTex could not have been negligent or grossly negligent when it did not owe Valentine a duty in the first instance. Because Plaintiffs seek to expand liability beyond the elements established in *Otis* and *Love* and

would impose "a substantial burden on employers [which cannot be] reasonably justified," *Nabors Drilling, Inc.*, 288 S.W. at 411, their arguments fail.

### c. Employer's Duty to Protect Third Parties from Unfit or Incompetent Employees

"Under the common-law doctrine regarding negligent hiring and supervision of employees, an employer's negligent performance of those duties may impose liability on an employer if the complainant's injuries result from the employer's failure to take reasonable precautions to protect the complainant from the misconduct of its employees." 33 Tex. Jur. 3d Employer and Employee § 361 (2015); *see also Waffle House, Inc. v. Williams*, 314 S.W.3d 1, 10 (Tex. App. Fort Worth 2007) (citing *Mackey v. U.P. Enterprises, Inc.*, 935 S.W.2d 446, 459 (Tex. App. Tyler 1996)). The duty arises when the employer hires or retains an incompetent employee who the employer knew or, in the exercise of ordinary care, should have known was incompetent or unfit, thereby creating an unreasonable risk of harm to others. *See Ogg*, 239 S.W.3d at 420 (holding that Dillard's department store was not liable to a customer who claimed false imprisonment when its security officer had only received one prior complaint after years of working as a police officer and part-time security officer). In other words, the basis of liability is the employer's own negligence in hiring or retaining an unfit employee. *See Morrone*, 215 S.W.3d at 575. While liability may be imposed on an employer even when its employee's wrongful act falls outside the scope of his employment, the theories of negligent hiring and supervision do require that the harm result from the employment.[12] *Dieter*, 739 S.W.2d at 408.

---

[12] Scholars and practitioners recognize the distinction between claims for respondeat superior and negligent hiring and retention, while noting that both claims require some connection between the tortious conduct and the employee's employment. *See generally*, Louis Buddy Yosha & Lance D. Cline, *Negligent Hiring and Retention of an Employee*, 29 Am. Jur. Trials 267 (2015) (discussing the differences between claims for respondeat superior and negligent

If the law did not require such a connection, "an employer would essentially be an insurer of the safety of every person who happens to come into contact with his employee simply because of his status as an employee." *Id.*

To prevail on a negligent hiring or retention claim, a plaintiff must demonstrate that the employer's negligence in hiring or retaining the employee was the proximate cause of the plaintiff's injury. *See Fifth Club, Inc. v. Ramirez*, 196 S.W.3d 788, 796 (Tex. 2006); *Morales v. Corinthian Colleges, Inc.*, 2013 U.S. Dist. LEXIS 108563, *9. "Proximate cause has two elements: cause in fact and foreseeability." *W. Invs., Inc. v. Urena*, 162 S.W.3d 547, 551 (Tex. 2005). Texas courts have required some nexus between the plaintiff's injury and the employee's work duties before imposing liability under a theory of negligent hiring or retention. *See*, *e.g.*, *Houser v. Smith*, 968 S.W.2d 542, 546 (Tex. App. Austin 1998); *Guidry v. National Freight*, 944 S.W.2d 807, 810–11 (Tex. App. Austin 1997). This nexus between the harm and the employee's job is the crux of determining cause-in-fact. *See Najera v. Recana Solutions*, LLC, 2015 Tex. App. LEXIS 8748, *13 (Tex. App. Houston 14th Dist. Aug. 20, 2015) (citing *Wise v. Complete Staffing Servs., Inc.*, 56 S.W.3d 900, 901 (Tex. App. Texarkana 2001)) ("[T]he general negligent hiring rule [] is not aimed at avoiding a general propensity for bad acts, but rather at protecting against workers who are unsafe or dangerous on the job—*i.e.*, their incompetency must be somehow job-related.") If the injury causing conduct is wholly unrelated to the employee's job, then the employer's negligence in hiring, retaining, or supervising the employee cannot be the cause-in-fact of the injury.

---

hiring or retention, and demonstrating how these claims operate in various factual scenarios by giving an illustrative example).

Foreseeability, the second component of proximate cause, "requires that a person of ordinary intelligence should have anticipated the danger created by a negligent act or omission." *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 478 (Tex. 1995). A danger of injury is foreseeable if its "general character . . . might reasonably have been anticipated." *Id.* (internal quotation marks omitted) (quoting *Nixon v. Mr. Property Mgmt. Co.*, 690 S.W.2d 546, 551 (Tex. 1985)). Therefore, an employer is directly liable to third parties only when it places an incompetent employee in a situation that creates a foreseeable risk of harm to others because of that employee's particular duties. *See, e.g.*, *Ogg*, 239 S.W.3d at 420; *Waffle House, Inc. v. Williams*, 314 S.W.3d 1 (Tex. App. Fort Worth 2007), rev'd on other grounds, 313 S.W.3d 796 (Tex. 2010); *Guidry*, 944 S.W.2d at 810–11 (holding a trucking company was not liable for hiring a driver who sexually assaulted a third party near a rest-stop because the company only owed a duty to hire a competent driver and was not responsible for protecting the public from its employee's criminal acts). An employer is not liable when there is nothing in the employee's background that would lead a reasonable employer not to hire or retain the employee. *Ogg*, 239 S.W.3d at 421.

Plaintiffs contend that LouTex is liable for negligent hiring and retention because it knew Hodnett was incompetent to perform manual labor because of his preexisting back-injury. Pls.' Resp. to Mot. Summ. J. at 9–10. They assert that LouTex also knew Hodnett used Hydrocodone to overcome his back pain while conducting manual labor. *Id.* Therefore, by hiring Hodnett – knowing his unfitness for manual labor – LouTex endorsed and contributed to his use of Hydrocodone which, according to Plaintiffs, proximately caused the death of Valentine. *Id.*

Plaintiffs' contentions, however, lack factual support in the record. Construing the evidence in the record in the light most favorable to the Plaintiffs, LouTex knew or should have

known that Hodnett had a preexisting back injury and was prescribed Hydrocodone. However, Hodnett's injury and use of prescription medication, in and of itself, did not render him incompetent or unfit for the job for which he was hired.[13] According to the uncontested evidence, Hodnett was hired by LouTex to assist with the process of moving heavy equipment from one job-site to another. *See* Hodnett Dep. 18–20. He was not hired to drive any of LouTex's company-owned vehicles or equipment; but rather was a laborer who assisted other employees with loading the heavy equipment onto flat-bed trailers and then served as a spotter (in the passenger-seat) for the tractor-trailer driver. *Id.* Thus, because Hodnett was not hired to drive and was never asked to drive for LouTex, his employement with LouTex could not have been the cause-in-fact of the accident.

Additionally, based on the facts in the record, there is nothing in Hodnett's background that would have caused a reasonable employer not to hire him. Hodnett had no record of DWIs, *see* Hodnett Dep. 16:8–10, and there is no probative summary judgment evidence of previous workplace misconduct or incapacitation, *see* Harvey Aff. ¶ 5. If courts began imposing liability on employers simply because they knew their employees took prescription medication at the time they were hired, it would set a sweeping precedent that would render vast segments of the population unemployable.

---

[13] In fact, if LouTex had refused to hire Hodnett because of his preexisting back injury, or had instituted a blanket "no prescription drug" policy, it may have incurred liability under the Americans with Disabilities Act. *See* 42 U.S.C. §§ 12111–12 (2008); *see also Rowles v. Automated Production Systems, Inc.*, 92 F.Supp.2d 424, 430 (M.D. Pa. 2000) (holding that employer's drug policy violated the ADA "to the extent that it prohibits the use of all legally prescribed controlled substances without a determination that such prohibition is job-related and consistent with business necessity"); *accord Meyer v. Qualex, Inc.*, 388 F. Supp. 2d 630, 636 (E.D. N.C. 2005) (holding employer's "drug-free workplace" policy did not improperly prohibit employees' use of prescription drugs in violation of ADA, where policy by its terms prohibited only "abuse" of prescription drugs and required employee to inform supervisor of use of prescription or over-the-counter drug which might alter employee's ability to perform).

Even indulging in several assumptions that are most favorable to Plaintiffs – including that Hodnett was incompetent to perform heavy manual labor, his work with LouTex caused his back pain and he was intoxicated on the morning of the accident – LouTex could not have reasonably foreseen or prevented Hodnett's tortious conduct and Hodnett's employment with LouTex was not the cause-in-fact of Valentine's death. In this case, there is no nexus between Hodnett's employment with LouTex and the accident. At the time of the accident Hodnett was off-duty and was driving his personal vehicle to purchase his own meals. Because Hodnett left his portable trailer home almost twelve hours after his shift with LouTex had ended, there was no link between his injury-causing conduct and his job. There was also no opportunity for LouTex to reasonably control Hodnett's conduct or take precautions to prevent injury to others. Because Valentine's injury was not the foreseeable result of Hodnett's employment, LouTex is not liable for an injury to a third party under a negligent hiring theory. *See TXI Transp. Co. v. Hughes*, 224 S.W.3d 870 (Tex. App. Fort Worth 2007). Accordingly, the undersigned concludes that, on this record, summary judgment should be granted because no facts support a claim for negligent hiring or retention.

## IV.   CONCLUSION

For the reasons set forth above, the undersigned **DENIES** LouTex's Motion to Strike (Dkt. No. 49), and **RECOMMENDS** that LouTex's Motion for Summary Judgment (Dkt. No. 41) be **GRANTED.**

<u>**NOTICE OF RIGHT TO OBJECT**</u>

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections.

*Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987) (quoting *Nettles v. Wainwright*, 677 F.2d 404, 410 n.8 (5th Cir. 1982) (en banc)).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after being served with a copy of the Report shall bar that party from *de novo* review by the District Court of the proposed findings and recommendations and, except upon grounds of plain error, shall bar the party from appellate review of proposed factual findings and legal conclusions accepted by the District Court to which no objections were filed. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn,* 474 U.S. 140, 150–53 (1985); *Douglass,* 79 F.3d at 1428–29.

The Clerk is directed to send a copy of this Report and Recommendation to all parties.

SIGNED this 16th day of September, 2015.

DIANA SONG QUIROGA
United States Magistrate Judge